MARK BURSTEEN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 6, 1912. — April 1, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DeCOURCY, JJ.

*Evidence,* Matters of common knowledge, Judicial notice. *Railroad. Street Railway,* Operation in subway.

The court here took judicial notice of the fact that cars in the Boston subway stop only at fixed stations.

It is right for the conductor of a surface car, which has started from a station in the Boston subway and has moved about two feet with another car coming about twenty feet behind it, to refuse to stop the car or to allow a passenger to leave it in order that the passenger may recover a valuable violin, which in its case has slipped from under his arm and has fallen from the car.

TORT for the loss of a violin with its case on May 17, 1909, when the plaintiff was a passenger on a car of the defendant at the Park Street subway station in Boston. Writ dated July 15, 1909.

In the Superior Court the case was tried before *Dana,* J. The plaintiff testified that on May 17, 1909, he entered the subway at Park Street as a passenger, and in the usual way boarded, by the rear entrance, a closed north bound surface car of the defendant carrying his violin in its case under his arm; that as he was entering the body of the car from the platform the conductor rang the bell, the car jerked, he tried to grab a handle and his violin fell out from under his arm; that the violin fell upon the platform of the car, thence to the concrete platform of the subway station, and thence to the car track behind the car; that as soon as the violin fell, he notified the conductor of the dropping of his violin, and asked the conductor to stop the car and allow him to recover it; that at the same time, when the car had not gone more than a distance of two feet and while the car was in motion, he tried to leave the car and for that purpose to open the outside door of the vestibule of the car which the conductor was in the act of closing; that the conductor refused to stop the car, and refused to allow the plaintiff to leave the car, and held the vestibule door shut so that the plaintiff could not open it or leave the car, and told the

plaintiff, "We are not allowed to stop our cars in the subway;" that, when the plaintiff's violin dropped from the car to the tracks, another surface car of the defendant was coming along about twenty feet behind the car which the plaintiff had boarded; that, when the plaintiff got to the next subway station, at Scollay Square, and was allowed to leave the car, he immediately went back to where his violin had dropped in order to find it, but that it had disappeared and never was recovered.    No negligence in the manner in which the car started was asserted by the plaintiff.

At the close of the evidence, the judge ordered a verdict for the defendant, with the stipulation by consent of the parties, that, if the ruling was wrong, judgment was to be entered for the plaintiff in the sum of $150; and that, if the ruling was right, judgment was to be entered for the defendant.

*L. S. Thierry*, for the plaintiff.

*C. Brewer*, for the defendant.

SHELDON, J.    The plaintiff does not contend that the jerk of the car and the resulting fall of his violin were due to any negligence of the defendant.    His claim is that the conductor ought to have stopped the car and allowed the plaintiff to alight and at least attempt to recover his property.    But this contention cannot be maintained.

The occurrence was in the Boston subway, where it is generally known, and we must take judicial notice, that the cars stop only at fixed stations, and all cars are run with the expectation that there will be no other stops.    In this very case, another car was coming only about twenty feet behind the car in question.    A sudden stop of the forward car would have involved imminent danger of a collision, and would have exposed both the plaintiff and the other passengers in each car to the risk of serious injuries.    The established rule that a railroad company is not bound to stop a train between stations for the purpose of allowing a passenger to search for lost property, even of great value, governs the case. *Henderson* v. *Louisville & Nashville Railroad*, 123 U. S. 61.    Here as in that case the property lost was in the personal custody of the passenger, and the defendant's tracks in the subway are used in the same way as the tracks of a steam railroad upon the surface of the earth.    As in that case, the plaintiff had no right to require the defendant, for the purpose of relieving him from the con-

sequences of an accident for which it was not responsible, to stop its car "short of a regular station, to the delay and inconvenience of other passengers, and the possible risk of collision." And see *Lake Shore & Michigan Southern Railroad* v. *Pierce*, 3 Am. & Eng. R. Cas. 340, 342; *Wells* v. *Alabama Great Southern Railroad*, 40 Am. & Eng. R. Cas. 645; *Alabama Great Southern Railroad* v. *Carmichael*, 90 Ala. 19, 24.

The case of *Chicago West Division Railway* v. *Hughes*, 69 Ill. 170, has no resemblance in its facts to the case at bar.

There is no merit in the contention that the defendant by not allowing the plaintiff to alight was guilty of a false imprisonment for which it now can be held. The declaration states no such cause of action, and what the conductor did was not wrongful.

*Judgment on the verdict.*